IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JUN 0 8** 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ALICE CARLSON | { | CIVIL ACTION NO. B-00-071 |
| V. | { | **(ORAL HEARING IS REQUESTED)** |
| CITY OF HARLINGEN,<br>TEXAS and JIM SCHEOPNER | { | |

DEFENDANTS' MOTIONS TO DISMISS
UNDER FRCP 12(b)(5) and UNDER FRCP 12(b)(6)

TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants,

CITY OF HARLINGEN and
JIM SCHEOPNER

JURY REQUESTED

CHiPDF - www.fosio.com

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . iv

I.   Statement of Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . 1

II.  Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Service of Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  Plaintiff Carlson Failed to Properly
     Serve Complaint on Government Entities . . . . . . . . . . . . . . . . . . 4

V.   Complaint Fails to State Claims Under 4th and 14th Amendments . . . . . . . . 5

     A.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.   No Fourth Amendment Claim Absent
          A "Seizure" by Government Officers . . . . . . . . . . . . . . . . . . 5

     C.   Plaintiff Is Limited To Substantive Due Process . . . . . . . . . . . . . 7

     D.   Supreme Court and Fifth Circuit Have Not
          Extended "Substantive Due Process" to Require
          Defendants Prevent Harm By A Private Citizen . . . . . . . . . . . . . 8

     E.   Complaint Fails to State Facts Showing Defendants
          Put Plaintiff Carlson In A Dangerous Environment
          and Stripped Him of the Ability to Defend Herself . . . . . . . . . . . 9

          1.   Defendants Did Force Plaintiff in Harm's Way
               While Impairing Her Ability to Protect Himself . . . . . . . . . . 9

2.    Defendants Did Not Create A Risk Of
      Third Party Crime That Did Not Already Exist . . . . . . . . . .  10

3.    Defendants Did Not Know Of Any
      Immediate Danger Facing A Known Victim  . . . . . . . . . . .  11

F.    No "Special Relationship" Claim . . . . . . . . . . . . . . . . . . . . . . . .  12

VI.  State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

# INDEX OF AUTHORITIES

<u>Cites:</u>                                                                                    <u>Page</u>

*Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1993) . . . . . . . . 8

*Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3rd Cir. 1996) . . . . . . . . . . . . . 4

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brower v. Inyo*, 489 U.S. 593, 596-597,
    109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Callis v. Sellars*, 931 F.Supp. 504 (S.D.Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . 10

*Collins v. Harker Heights*, 503 U.S. 115
    112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 7

*County of Sacramento v. Lewis*, 523 U.S. 833,
    118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) . . . . . . . . . . . . . . . . . . . . . . 5-7

*DeShaney v. Winnebago County Dept. of Soc. Serv.*,
    489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) . . . . . . . . . . . . 2, 7-9

*Doe v. Hillsboro ISD*, 113 F.3d 1412 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . 8, 9

*Estate of Brown v. Barian*, 43 F.Supp.2d 1008 (E.D.Wisc. 1999) . . . . . . . . . . . . . 11

*Golden Spread Council, Inc. v. Akins*,
    926 S.W.2d 287 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Graham v. Connor*, 490 U.S. 396,
    109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Greater Houston Transp. Co. v. Phillips*,
    801 S.W.2d 523 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992) . . . . . . . . . . . . . . . . . 5

*Johnson v. Dallas ISD*, 38 F.3d 198
    (5th Cir. 1994), *cert. denied*, 514 U.S. 1017 (1995) . . . . . . . . . . . . . . 8-10

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1997) . . . . . . . . . . . . . . 9

*Kennedy v. Baird*, 682 S.W.2d 377
    (Tex. App.- El Paso 1984, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Landol-Rivera v. Cruz*, 906 F.2d 791 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . 6

*Lefall v. Dallas ISD*, 28 F.3d 521 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . 8, 10

*Losinski v. City of Trempealeau*,
    946 F.2d 544 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mark v. Borough of Hatboro*, 51 F.3d 1137 (3rd Cir. 1995), *cert denied*,
    516 U.S. 858 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521 (5th Cir. 1996) . . . . . . 5

*Medeiros v. O'Connell*, 150 F.3d 164 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . 6, 7

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Randolph v. Cervantes*, 130 F.3d 727 (5th Cir. 1997)
    *cert. denied* 525 U.S. 822 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389 (5th Cir. 1999) . . . . . . . . . . . . 11, 12

*Sanchez v. Figueroa*, 996 F.Supp. 143 (D.C.Puerto Rico 1998) . . . . . . . . . . . . . 6

*Schaefer v. Goch*, 153 F.3d 793 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 6

*Summar v. Bennett*, 157 F.3d 1054 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 10

*Walton v. Alexander*, 44 F.3d 1297 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 12

CitePDF - www.fastio.com

*Washington v. Glucksberg*, 521 U.S. 702,
    117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Statutes:

    42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

Texas Civil Practices & Remedies Code:

    Chap. 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure:

    Rule 4(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Rule 4(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Rule 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5
    Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

United States Constitution:

    14th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6-8
    Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALICE CARLSON | { | |
| | { | CIVIL ACTION NO. B-00-071 |
| V. | { | |
| | { | **(ORAL HEARING IS REQUESTED)** |
| CITY OF HARLINGEN | { | |
| TEXAS and JIM SCHEOPNER | { | |

### DEFENDANTS' MOTION TO DISMISS
### UNDER FRCP 12(b) and UNDER FRCP 12(b)(6)

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants CITY OF HARLINGEN, TEXAS and JIM SCHEOPNER, and file this their **DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b) and UNDER FRCP 12(b)(6)** and would show the Court as follows:

### I. Statement of Nature and Stage of the Proceedings

Plaintiff Carlson sues for emotional distress under the (1) Texas Tort Claims Act (Tex. Civ. Prac. & Rem. Code, Chap. 101) and (2) 42 USC § 1983. Mrs. Carlson suffered fright during an exchange of gunfire between County Sheriff deputies and a private citizen, Ernest Moore.

Defendants move to dismiss all claims under Fed.R.Civ.Pr. 12(b)(5). Alternatively, they move to dismiss all claims under Fed.R.Civ.P. 12(b)(6).

1

II. Statement of the Issues

1.     Whether the case should be dismissed for failure to serve a summons with the Complaint as Fed.R.Civ.P. 4(c) requires.

2.     Whether the Complaint pleads any exception to the holding in *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that the 14th Amendment's Due Process Clause does not impose a duty on public officials to prevent a third party from causing Plaintiff emotional distress.

3.     Whether an exception exists to *DeShaney* for a risk of harm allegedly created by the Defendants if they did not force Plaintiff Carlson to encounter the danger and the Defendants did not remove her ability to protect herself or escape the risk.

4.     Whether Defendants had a duty to safeguard City property in order to prevent a third party from taking it and negligently using it in a manner that causes emotional distress.

## III. Background

### A. Service of Complaint

On May 19, 2000, Plaintiff's counsel personally delivered a copy of the Complaint to Defendant City of Harlingen's City Secretary, Ms. Sylvia Trevino. See attached Exh. 1.[1] Also on May 19, 2000, a copy of the Complaint was served on the wife of Defendant Scheopner. See attached Exh. 2. In both cases, there was no summons attached to or served with the Complaint. Exhs. 1 & 2.

### B. Plaintiff's Allegations

The Complaint, ¶ 14, alleges former police chief Scheopner approved the issuance of an AR-15 rifle to Harlingen Police Dept. Det. Moore. Complaint, ¶ 14. Plaintiff alleges Det. Moore was not proficient in the use and firing of the weapon and his duties did not require him to have such a rifle. Complaint, ¶ 15. The Complaint, ¶¶ 18, 34(A), alleges that Det. Moore promised to keep the weapon in his car trunk, and was not trained in the proper, safe storage of weapons.

The Complaint, ¶¶ 19 and 21, allege Det. Moore, in fact, stored the rifle in a rifle safe in the bedroom of his son, Ernest Moore. Plaintiff alleges that Ernest Moore was unstable, taking anti-depressants, and a former cocaine user. Complaint, ¶ 20. Plaintiff alleges that, because the rifle safe was in Ernest's bedroom, he had "access" to the rifle. Complaint, ¶ 21.

---

[1] Exh. 1 and 2 are the Affidavits of Sylvia Trevino and Sue Schoepner. They are offered solely for the purposes of the Motion to Dismiss for improper service; they are not offered as part of the Motion to Dismiss for failure to state a claim.

3

The Complaint, ¶ 25, alleges that, on July 7, 1998, Ernest Moore committed a double homicide in Rio Hondo, Texas. As a result, the Sheriff's deputies began a manhunt for Ernest Moore at the Moores' residence. Complaint, ¶¶ 25-26.

Plaintiff Carlson lived in a mobile home on the lot adjacent to the Moore property. Complaint, ¶ 24. The Cameron County Sheriff's officers ordered her to stay on her property. Complaint, ¶ 27.

Although the Complaint is unclear how, gunfire erupted at the Moore residence. She alleges that a fusillade of bullets sprayed over her residence. Complaint, ¶ 26. The only alleged use she claims Ernest Moore made of the HPD rifle was to kill law enforcement agencies and to help "create a war zone." Complaint, ¶ 43. The Complaint claims that Defendants allegedly took liberty or property in violation of the Fourth Amendment made applicable through the U.S. Constitution, 14th Amend. Complaint, ¶¶ 1, 39. However, she also alleges the wrongful conduct constituted "a state created danger and special relationship." Complaint, ¶ 29.

### IV. Plaintiff Carlson Failed to Properly Serve Complaint on Government Entities

Defendants Harlingen and Scheopner move to dismiss under Fed.R.Civ.P. 12(b)(5) due to improper service. Fed.R.Civ.P. 4(c)(1) provides that a summons shall be served with the Complaint. This was not done. Failure to serve a proper summons with the Complaint requires dismissal. *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568-69 (3rd Cir. 1996).

V.  Complaint Fails to State Claims Under 4th and 14th Amendments

A.    Standard of Review

If the Court denies dismissal under Rule 12(b)(5), Defendants seek dismissal under

Rule 12(b)(6).

Under Rule 12(b)(6), the court must accept the allegations as true and must view

them in the light most favorable to plaintiffs, drawing all reasonable inferences in favor

of the pleader. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Dismissal under Rule

12(b)(6) is correct when it appears that no relief can be granted under any set of facts that

could be proven consistent with the allegations. *Meadowbriar Home for Children, Inc.*

*v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996).  However, the Complaint must state facts, not

conclusions, to survive a Rule 12(b)(6) challenge. *Guidry v. Bank of LaPlace*, 954 F.2d

278, 281 (5th Cir. 1992).

B.    No Fourth Amendment Claim Absent
      A "Seizure" by Government Officers

42 USC § 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490

U.S. 396, 393, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).  The first inquiry is to

isolate the precise provision of the federal Constitution that is allegedly infringed.

*Graham*, 490 U.S. at 394, 109 S.Ct. at 1870.  The Fourth Amendment applies when the

alleged use of excessive force arises from a search or seizure of the person. *Graham*, 490

U.S. at 394, 109 S.Ct. at 1871; *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct.

1708, 1716, 140 L.Ed.2d 1043 (1998).  A "seizure" occurs only when government agents

deliberately cause the termination of an individual's freedom through means intentionally applied to that individual. *Lewis, Id.* at 115; *Brower v. Inyo*, 489 U.S. 593, 596-597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). If the Complaint does not show a "seizure" under the Fourth Amendment, then an "excessive force" claim can be sustained only under a 14th Amendment "Substantive Due Process" analysis. *Lewis*, 118 S.Ct. at 1715-1716; *Petta v. Rivera*, 143 F.3d 895, 910-911 (5th Cir. 1998).

In *Lewis*, the Supreme Court made it clear that a Fourth Amendment "seizure" occurred only when the government caused an intended termination of freedom of movement through means intentionally applied to that individual. 118 S.Ct. at 1715 (instigating chase of motorcycle on which plaintiff was a passenger was not a Fourth Amendment "seizure"). Consequently, unintended injuries to bystanders or hostages during an arrest are not a "seizure" under the Fourth Amendment. *Lewis,* 118 S.Ct. at 1715; *Landol-Rivera v. Cruz*, 906 F.2d 791, 795-96 (1st Cir. 1990) (police officer who inadvertently shot hostages while aiming to hit kidnapper did not "seize" hostage for Fourth Amendment purposes); *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998) (accidental shooting of wife held hostage by husband was not a "seizure" under Fourth Amendment, even though police officers had surrounded their house and instructed wife to "get down"). Likewise, there is no Fourth Amendment claim when the force is not directed deliberately at the plaintiff. *Petta*, 143 F.3d at 901; *Medeiros v. O'Connell*, 150 F.3d 164, 168 (2nd Cir. 1998); *Sanchez v. Figueroa*, 996 F.Supp. 143, 1476 (D.C.Puerto Rico 1998).

Here, Carlson has no Fourth Amendment claim against Defendants, because there was no seizure. First, she affirmatively alleges it was the county's agents who told her to remain in her house. Second, unintended injuries to bystanders do not constitute a "seizure" under the Fourth Amendment. *Lewis,* 118 S.Ct. at 1715. There is no "seizure" when the force is not deliberately directed at the plaintiff. *Petta,* 143 F.3d at 901; *Medeiros,* 150 F.3d at 168.

C.   Plaintiff Is Limited To Substantive Due Process

Shorn of rhetoric, the core of Plaintiffs' Complaint is that a private citizen shot Deputy Carlson, using a rifle allegedly taken from Det. Moore due to inadequate security measures. Claims of injury to hostages and bystanders from police action can succeed only through "Substantive Due Process" under the 14th Amendment. However, the 14th Amendment "Due Process" Clause does not require government officials to prevent third parties from harming the plaintiff. The Fifth Circuit has yet to adopt the "state-created" danger doctrine as an exception to *DeShaney.* Even if this Court were to find the doctrine viable, the Complaint fails to state such a claim.

Claims of injury to hostages and innocent bystanders can arise only under the 14th Amendment Due Process Clause, i.e., "Substantive Due Process." *Lewis,* 118 S.Ct. at 1716; *Petta,* 143 F.3d at 901. However, the Courts have been reluctant to expand "Substantive Due Process" claims; courts are cautioned to exercise the utmost care in breaking new ground by invoking that doctrine. *Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 2269, 138 L.Ed.2d 772 (1997); *Collins v. Harker Heights,* 503 U.S. 115,

125, 112 S.Ct. 1061, 1068-1069, 117 L.Ed.2d 261 (1992).   The Supreme Court has generally restricted, rather than expanded, Substantive Due Process claims.  *See, for example, Washington,* 117 S.Ct. at 2275 (no right to assisted suicide); *Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1993) (no right under Substantive Due Process to be free from criminal charges initiated without probable cause).

D.   Supreme Court and Fifth Circuit Have Not
Extended "Substantive Due Process" to Require
Defendants Prevent Harm By A Private Citizen

In *DeShaney,* the Supreme Court plainly stated that the 14th Amendment's Due Process Clause was triggered only by affirmative government action and put no duty on government officials to act to prevent a third party from harming the claimant.  489 U.S. at 196-197, 109 S.Ct. at 1004.  The court neither approved nor disapproved of a rule imposing liability if the State created the risk of harm to which it forced the claimant to suffer, i.e., an exception for "stated-created" danger.  *Id.*

Though often asked to do so, the Fifth Circuit has consistently declined to adopt the "state-created danger" rule.  *Randolph v. Cervantes,* 130 F.3d 727, 731 (5th Cir. 1997), *cert. denied,* 525 U.S. 822 (1998); *Doe v. Hillsboro ISD,* 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc); *Johnson v. Dallas ISD,* 38 F.3d 198, 201 (5th Cir. 1994), *cert. denied,* 514 U.S. 1017 (1995).  The Fifth Circuit has cast doubt on whether it is a viable exception to *DeShaney. Lefall v. Dallas ISD,* 28 F.3d 521, 530 (5th Cir. 1994).  The Supreme Court stated that the rationale for any exception is that the state exercises its

8

authority to restrain the individual's liberty so as to render him unable to protect himself. *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005. In *Johnson*, the Court questioned whether it could ever meet the "demanding standard for constitutional liability." 38 F.3d at 201.

E.    Complaint Fails to State Facts Showing Defendants
      Put Plaintiff Carlson In A Dangerous Environment
      and Stripped Him of the Ability to Defend Herself

Though the Fifth Circuit has declined to adopt the "state-created danger" rule, it has described its elements as:

1.    The government officials must create the dangerous situation;

2.    They must know the situation is dangerous;

3.    The danger must create an opportunity for a third party to commit a crime which would not otherwise exist; and

4.    They must affirmatively place the plaintiff in a position of danger in such a way as to strip the plaintiff of his ability for self defense.

*Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201. The officials' actions must place the plaintiff at a specific risk, as opposed to a risk that affects only the public generally. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1997); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3rd Cir. 1995), *cert denied*, 516 U.S. 858 (1995). The official must have actual knowledge that the risk of harm exists. *Doe*, 113 F.3d at 1415.

1.    Defendants Did Force Plaintiff in Harm's Way
      While Impairing Her Ability to Protect Himself

Here, the allegations conclusively acknowledge that Defendants did not put Mrs. Carlson into a dangerous situation nor did they strip her of her ability of self

defense.  The Complaint, ¶ 27, alleges the Sheriff's deputies "ordered" her to remain in her house.  This conclusively negates any claim Defendants put her in harm's way.  *See, for example, Randolph*, 130 F.3d at 731; *Callis v. Sellars*, 931 F.Supp. 504, 513, 520 (S.D.Tex. 1996); *Summar v. Bennett*, 157 F.3d 1054, 1059 (6th Cir. 1998).

Simply because Mrs. Carlson lived near the Moore residence did not make her more vulnerable.  *See, for example, Randolph*, 130 F.3d at 731 (social worker's encouragement of plaintiff to live at halfway house did not create opportunity that would not otherwise have existed for crime to occur).  The Complaint fails to show that the *Defendants* stripped her of means to defend herself and cut off from all sources of aid.

      2.    Defendants Did Not Create A Risk Of
              Third Party Crime That Did Not Already Exist

Here, the alleged risk of harm was that Ernest Moore would seize the HPD rifle and then become involved in a  "shoot out" with deputies trying to capture him.  The pleadings must show Defendants had created the opportunity for a third party's crime that otherwise would not have existed.  *Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201.  Therefore, they must show that Defendants were actually aware they had created an extreme risk that a private citizen would take the HPD weapon and then become involved in a "shoot out," which risk did not otherwise exist.  *Johnson*, 38 F.3d at 201-2; *Lefall*, 28 F.3d at 531.

The Complaint alleges nothing to show that Defendants incited Moore to commit the earlier offense, to take Det. Moore's rifle, or to evade apprehension.  The pleading

CVisPDF - www.fesisi.com

states no facts showing that, unless Ernest Moore seized an HPD rifle, no gunfire would have erupted. Not issuing the rifle to Det. Moore would have prevented Ernest from having it. However, this is not the same thing as creating an opportunity to commit those crimes which Ernest would not have had otherwise. Failing to prevent a crime is not the same thing as causing it. *Estate of Brown v. Barian*, 43 F.Supp.2d 1008, 1019 (E.D.Wisc. 1999).

Any alleged knowledge that Ernest Moore might be dangerous or likely to harm people does not create the risk of harm. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 700 (9th Cir. 1990); *Losinski v. City of Trempealeau*, 946 F.2d 544, 551 (7th Cir. 1991). Plaintiff must state facts showing Defendants' storage practices created the opportunity for Ernest Moore to cause Carlson to suffer emotional distress, which chance he would not have had without the HPD rifle.

Moreover, the pleadings do not state facts showing the *Defendants* caused the dangerous situation. Mrs. Carlson's emotional distress resulted from bullets going over her house. However, she does not allege these came from the HPD rifle or that Ernest Moore was attempting to shoot in the direction of her house. The bullets may well have come from law enforcement rifles.

> 3.   Defendants Did Not Know Of Any
>       Immediate Danger Facing A Known Victim

The "state created danger" doctrine will not apply where the government actor is not aware of any immediate danger facing a known victim. *Saenz v. Heldenfels Bros.*,

*Inc.*, 183 F.3d 389, 392 (5th Cir. 1999). There, the Fifth Circuit clearly stated that the "state created danger" theory is inapposite without a known victim. 183 F.3d at 392.

In *Saenz*, the Fifth Circuit upheld summary judgment in favor of two sheriff's deputies who declined to arrest an obviously drunk driver. 183 F.3d at 390. About 15 minutes after the deputies declined to arrest him, the drunk driver had an accident causing two fatalities. *Id.* The Fifth Circuit affirmed, holding there was no Due Process violation for increasing the risk of harm to unidentifiable members of the public. *Id.* at 391.

Here, there is no allegation Defendants even knew Ms. Carlson existed, much less knew of any specific harm to her. In fact, Plaintiff claims that she stayed in her house because the Sheriff's deputies ordered her to do so. She alleges no facts showing the Defendants knew or were virtually certain that the Sheriff would direct her to take this action.

F.     No "Special Relationship" Claim

Plaintiff's "special relationship" allegation fails because she does not allege that she was in custody of Harlingen or its officers. *Walton v. Alexander*, 44 F.3d 1297, 1301-4 (5th Cir. 1995).

VI.   State Law Claims

Plaintiff alleges only a negligence claim against Defendants. She does not allege that Defendants entrusted the rifle to Ernest Moore. Rather, she relies on a theory that he took it without Det. Moore's knowledge or consent. The alleged negligence focused solely on the inadequate security for the rifle, not negligent entrustment to Ernest Moore.

Finally, the sole event is that gunplay between sheriff's deputies and Ernest Moore caused emotional distress to Plaintiff Carlson.

Texas cases have held that negligent entrustment of a firearm to an incompetent user may actionable. *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex. App.- El Paso 1984, no writ). However, *Kennedy* does not state that there can be liability for failing to prevent the weapon from being taken without permission.

To the extent that the complaint alleges Defendants negligently failed to destroy the rifle, it fails to state facts raising state law tort duty. Whether the facts arise to a legal duty to exercise ordinary care is a law question for the court. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The court weighs the nature of the risk, the foreseeability of the risk of harm, and the probability of injury against the utility of the defendant's conduct, imposing a burden on the defendant to guard against that injury, and the magnitude of that burden. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289-90 (Tex. 1996). The foreseeability of harm is not alone sufficient to create a duty to exercise care. *Golden Spread Counsel*, 926 S.W.2d at 290-291. Generally, a person has no duty to protect another from the criminal acts of the third party or otherwise control the third party to prevent harm. *Walker v. Harris*, 924 S.W.2d 375, 377 (1986).

Finally, the only resulting injury was emotional distress. There is no general duty in Texas not to negligently inflict emotional distress. *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993).

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants CITY OF HARLINGEN,

TEXAS and JIM SCHEOPNER pray the above and foregoing be taken under submission

and upon hearing same, the Court grant the relief requested, dismiss all or part of the

claims alleged, or grant any other such further relief to which they may show themselves

entitled.

Respectfully submitted,

By: _____

TOM LOCKHART
Federal ID No. 2257
State Bar No. 12473500
ROGER W. HUGHES
Federal ID No. 5950
State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants,

CITY OF HARLINGEN and JIM SCHEOPNER

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this _____ day of June, 2000, to the following counsel of record and interested parties:

Attorney of record for Plaintiff, ALICE CARLSON:

Mr. Ronaldo S. Lozano           **Via CMRRR No. 7099 3220 0001 0358 0481**
Attorney at Law
360 East Hwy. 77, Suite 1
San Benito, TX 78586-5214

ROGER W. HUGHES

15

# AFFIDAVIT

STATE OF TEXAS                    §
                                  §
COUNTY OF CAMERON                 §

BEFORE ME, the undersigned Notary Public in and for the State of Texas, on this

day personally appeared SYLVIA TREVINO, known to me to be the person whose name

is subscribed hereto, who being first duly sworn in the manner provided by law, on oath

stated as follows:

1.   My name is SYLVIA TREVINO. I am over the age of 18 years and
     am competent to make this affidavit. I am currently the City
     Secretary for the City of Harlingen.

2.   On May 19, 2000, Mr. Ron Lozano came to City Hall in Harlingen
     and served on me Plaintiff's Complaint in "Carlson v. City of
     Harlingen, et al.", Civil Action No. B-00-071. He did not give me
     a summons in that case nor was a summons attached to the
     Complaint. He served on me only the Complaint.

The above and foregoing is true to my personal knowledge.

_____
SYLVIA TREVINO

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the

said Affiant, on the ___8th___ day of June, 2000, to certify which witness my hand and

seal of office.

_____
Notary Public, State of Texas
Printed Name: __Doris P. Loux__
My Commission Expires: __8 - 31-2000__

DORIS P. LOUX
Notary Public
STATE OF TEXAS
My Comm. Exp. Aug. 31, 2000

Motion to Dismiss, Exh. 1

# **AFFIDAVIT**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned Notary Public in and for the State of Texas, on this day personally appeared SUE SCHEOPNER, known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath stated as follows:

1.  My name is SUE SCHEOPNER. I am over the age of 18 years and am competent to make this affidavit.

2.  I am the wife of the former Harlingen City Chief of Police, Jim Scheopner. On May 19, 2000, Mr. Sam Lozano came by our house to serve papers on my husband, Jim Scheopner. At that time, Jim Scheopner was in the shower and not available to come to the door. Mr. Lozano then served on me the Complaint in "Carlson v. City of Harlingen, et al.", Civil Action No. B-00-071.

3.  Mr. Lozano gave me only a copy of the Complaint. He did not give me any summons or any document marked or titled "Summons." The only document he left at our house was a copy of the Complaint in Civil Action No. B-00-071.

The above and foregoing is true to my personal knowledge.

SUE SCHEOPNER

Motion to dismiss, Exh. 2

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the said Affiant, on the _8ᵈ_ day of June, 2000, to certify which witness my hand and seal of office.

RITA BALLI
MY COMMISSION EXPIRES
February 11, 2001

Notary Public, State of Texas
Printed Name: _Rita Balli_
My Commission Expires: _02-11-01_

AFFIDAVIT OF SUE SCHEOPNER
[10-rita] c:\FILES\H1023\CARLSON\SCHEOPNER.AFF

2