

United States District Court
Southern District of Texas
FILED

JUL 0 - 2000

Michael N. Milby, Clerk of Court

////IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ALICE CARLSON § § § | |
| V. § § § | CIVIL ACTION NO. B-00-071 |
| | JURY DEMANDED |
| CITY OF HARLINGEN, TEXAS § CAMERON COUNTY, § R.D. MOORE AND § JIM SCHEOPNER § | |

## FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW PLAINTIFF, and files her original complaint and state as follows:

### I.

### Preliminary Statement

1. Plaintiff Alice Carlson, is a person residing in Cameron County, Texas who was subjected to the deadly use of force in violation of rights guaranteed to *her* by the Fourth and Fourteenth Amendments to the United States Constitution. She commences this action pursuant to 42 U.S.C.§1983, which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of rights, privileges, or immunities secured by the Constitution and laws of the United States, and for the loss of the liberty and property interests of Plaintiff.

2. Plaintiffs seek compensatory damages and reasonable attorneys' fees as authorized by and pursuant to 42 U.S.C§1988.

### II. Jurisdiction

3. 42 U.S.C.§1983 and 42 U.S.C. §1988 provide jurisdiction over plaintiffs' constitutional claims for redress, which are conferred on this Honorable Court by 28

U.S.C.§1343(a)(3). Federal question jurisdiction is conferred on this Honorable Court by 28 U.S.C.§1331, because this action arises under the Constitution and laws of the United States. This Honorable Court has pendant jurisdiction over all claims asserted under the laws of the State of Texas pursuant to 28 U.S.C.§ 1367(a).

### III. Jury Trial Demand

4. Plaintiff demands a trial by jury.

### IV. Parties

**Plaintiff**

5. Plaintiff resides in Cameron County, Texas. Plaintiff was in Cameron County, Texas, on July 7, 1998, the date of the shooting resulting in her injuries.

**Defendants or their agents**

6. Police Detective Ralph D. Moore is and was at all relevant times a resident of Cameron County, Texas, was employed as a Police Officer by the City of Harlingen, Texas, and acted under color of law as a Police Officer and Detective employed by the City of Harlingen. It was and is Detective Moore's responsibility and duty not to improperly possess deadly weapons and to properly secure deadly weapons coming into his possession, care, custody or control from the City of Harlingen, all to prevent their access to, and unlawful use by, others against persons. It is also Detective Moore's responsibility and duty to know and to comply with minimum Constitutional requirements and to know and to comply with all Constitutional and lawful policies, procedures, practices and customs of the City of Harlingen, Texas. It was Detective Moore's responsibility to know and to comply with all laws, including the Constitution and laws of the United States and of the State of Texas, governing the performance of his duties and not to be intentionally, deliberately, or consciously indifferent to any of those

responsibilities or to the Constitutional rights of others. In all of these responsibilities material to this lawsuit, he failed while acting under color of state law.

7. Police Chief Jim Scheopner was at all relevant times employed as the Chief of Police for the City of Harlingen Police Department and acted under color of law in that capacity. It was Police Chief Scheopner's responsibility and duty to ensure that all deadly weapons, owned or turned into the Harlingen Police Department or coming into its possession, custody, and control, and those of any of its personnel, were properly stored and secured in the custody of the Harlingen Police Department, so that, among other things, those weapons would not be accessible to anyone other than designated police personnel and so that no one other than designated police personnel could use them. It was also Chief Scheopner's responsibility and duty to know and to comply with minimum Constitutional requirements; to know and to comply with all lawful policies, procedures, practices and customs of the City of Harlingen; and to implement and to enforce proper policies and procedures to ensure that the Harlingen Police Department and its personnel were not intentionally, deliberately, or consciously indifferent to the lives and safety of citizens, including its own and other law enforcement officers. It was Chief Scheopner's responsibility to know and to comply with all laws, including the Constitution and laws of the United States and of the State of Texas, governing the performance of his duties and the duties of all police officers employed by the City of Harlingen Police Department, and not to be, and not to allow officers to be, intentionally, deliberately, or consciously indifferent to any of his or their responsibilities or to the constitutional rights of others. In all of those responsibilities material to this lawsuit, he failed while acting under color of state law.

8. The City of Harlingen, Texas, is a municipality and a political subdivision of the State of Texas, located within the boundaries of the Brownsville Division of the United States District Court for the Southern District of Texas, where all acts and omissions allege herein occurred. It was and is the responsibility

of the Defendant City of Harlingen, Texas, to properly hire, train, supervise, test, and discipline City of Harlingen Police Department officers and to implement and to enforce proper policies and procedures to ensure that it and its officers were and are not intentionally, deliberately, or consciously indifferent to the constitutional rights and to the lives and safety of citizens, including law enforcement officers. It was and is the City of Harlingen's responsibility and duty to promulgate, to implement, and to enforce policies and procedures regarding the disposal, storage and security of deadly weapons over which it and its personnel had and have jurisdiction, possession, care, custody, or control.

9. The County of Cameron is located in Texas as a political subdivision of it. Service of process may be had on it's County Judge Gilberto Hinojosa.

10. **In all things, all officers and employees of the City of Harlingen who are identified by name or reference herein at all times acted in bona fide pursuance of general authority to act for the City of Harlingen on the subjects and matters to which their acts relate, which acts were and are imputed to the City of Harlingen. Harlingen Chief of Police Jim Scheopner had final authority to make and establish policy governing the operation of the City of Harlingen Police Department, and the conduct of its officers and personnel. Harlingen Chief of Police Jim Scheopner had full authority to resign or remove himself as Chief of Police of the City of Harlingen Police Department at any time.**

## IV. FACTS

### Background

11. In 1996, a Harlingen citizen, Sylvia Pirtle, a physician's wife, delivered possession and ownership of a AR-15 semi-automatic assault rifle to the Harlingen Police Department, for one - and only one - purpose: **to destroy it**. She was afraid of burglary and that the assault rifle could fall into the dangerous hands of criminals.

12. Chief of Police Scheopner possessed and controlled the rifle as custodian for the Harlingen Police Department and the City of Harlingen, Texas.

13. Contrary to the sole and express purpose for which Ms. Pirtle transferred to the Harlingen Police Department, the AR-15 semi-automatic assault rifle **was never destroyed**.

14. Instead, Chief of Police Scheopner and the City of Harlingen officially issued, ap4proved, allowed, or ratified the issuance of the AR-15 semi-automatic assault rifle to Harlingen Police Detective R.D. Moore for use as a service weapon, on condition representation or agreement that he store the assault rifle in a truck.

15. Detective Moore was never initially trained or qualified in the proficient use of that AR-15 assault rifle before it was issued to him or before the incident. Detective Moore neither demonstrated nor was ever required to demonstrate his proficiency in the use of that AR-15 assault rifle before it was issued to him or before the incident. Those omissions constituted an intentional, deliberate, or conscious indifference by all defendants to the lives and safety of citizens, including law enforcement officers.

16. Those omissions did not even remotely meet existing minimum statewide proficiency standards for that type of weapon. Those standards had already been in place and had even been published, on a statewide basis, since January 5, 1988 - for more than 10 years prior to the incident - of which all defendants had actual and constructive notice by virtue of §211.104 of the Administrate Rules of the Texas Commission On Law Enforcement Officer Standards and Education..

17. Detective Moore never did comply, nor was he ever required to comply, with those minimum standards by the City of Harlingen or by Chief Jim Scheopner, who issued, approved the issuance, allowed, or ratified the issuance to Detective Moore of that weapon. This occurred, even though (1) the owner of that weapon had tendered it to the Harlingen Police Department on condition that **it be destroyed** and even though (2) Detective Moore performed no duties which entailed or ever involved his use of that AR-

15 assault rifle, and finally, even though (3) the City of Harlingen and its Police Department had no SWAT team or Emergency Response Team - for which team, when it existed years earlier, Detective Moore had never been trained nor was ever a member - which entailed or required the use of that AR-15 assault rifle.

18. The City of Harlingen and Chief Scheopner never requested nor required the return of that AR-15 assault rifle by Detective Moore and never changed his status of duty because of their non-compliance with that minimum standard, nor did they require or enforce any order or directive to, or condition imposed on or representation or agreement by Detective Moore that he at all times safe-house said weapon in the trunk of his assigned unit.

19. The AR-15 assault rifle was stored at Detective Moore's residence. Detective Moore stored the rifle in the bedroom of Ernest Moore, Detective R.D. Moore's son, in a Remington rifle safe, not in the trunk of his assigned police unit. Ernest Moore had a key to the gun safe cabinet since its purchase.

20. Detective Moore's son, Ernest Moore, was known to be psychologically unstable, the medical recipient of prescription psychological drugs, and a cocaine user.

21. Detective Moore knew that son, Ernest Moore, had access to the contents of the rifle safe and to that AR-15 assault rifle.

21. Before July 7, 1998, The City of Harlingen had determined that the performance by Jim Scheopner of his duties as Chief of Police of the City of Harlingen was neither competent nor reliable. Despite that, the City of Harlingen, acting through its final policymakers with power to remove Jim Scheopner as Chief of Police, did not remove him before the tragic July 7, 1998 incident.

22. Before July 7, 1998, Jim Scheopner knew his performance of his duties as Chief of Police of the Harlingen Police Department was neither competent nor

reliable; yet, he did not remove himself from that position, which was an intentional, a deliberate, or a conscious indifference to the safe and proper operation of the Harlingen Police Department and to the lives and safety of citizens, including law enforcement officers it was **supposed to protect**.

23. Alice Carlson, your plaintiff, was in her mobile home trailer on the next habitable property adjacent to the Moore residence on July 7, 1998, in Cameron County, Texas. Several law enforcement officers including those from the Cameron County Sheriff's department prevented her egress at the time.

24. On the morning of July 7, 1998, a double homicide was committed in Rio Hondo, Texas. Ernest Moore was the suspect. He lived at the home of his parents, Detective and Mrs. R.D. Moore. Law enforcement agents began their search for the double homicide suspect, Ernest Moore, at the Moores' house.

25. United States Border Patrol Agents Ricardo Guillermo Salinas, ( deceased ), and Susan Lynn Rodriguez, ( deceased ), and other law enforcement officers responded to a call to assist Cameron County Deputies at the residence of Detective Moore, Mrs. Moore, and Ernest Moore.

26. Detective Moore was at the residence. He already knew his son, Ernest Moore, had taken the AR-15 assault rifle, knew his son was mentally unstable, knew his son was prescribed medication to stabilize himself, knew his son was upset over a girlfriend, knew his son had a violent temper, knew his son was a good shot, and knew - before those two Border Patrol Agents arrived at the scene - that his son, that very morning, was already ". . . in some shit. . ." or in ". . . some deep shit . . .", and suspected his son was hiding nearby. Despite all of that, law enforcement personnel chose to single out Ms. Carlson by ordering her to remain on her property.

27. R. D. Moore knew that Ernest Moore posed a serious and substantial threat to

anyone approaching that area or the residence.

**28.** Agent Ricardo Guillermo Salinas and others approached the Moores' residence with Cameron County Deputies in an attempt to search for the double homicide suspect Ernest Moore, son of Dectective Moore.

**29.** Detective Moore told Border Patrol Agent Rodriguez and other agents that they did not have his consent to enter his house, as his son, Ernest, was not an illegal alien, and turned them all away.

**30.** As the they were leaving Defendant Moore's residence and walking back toward their vehicle, Agent Ricardo Guillermo Salinas met with Agents Orlando Salinas and Agent Rodriquez, when Ernest Moore opened fire at the officers with that AR-15 assault rifle, shooting from a nearby corn field - with deadly accuracy.

**31.** United States Border Patrol Agent Salinas, was killed with the AR-15 assault rifle which the City of Harlingen and the Chief of Police, Jim Scheopner had allowed Detective Moore to have. That was the very weapon which a concerned citizen had turned into the City of Harlingen Police Department **for destruction**, so that it could not fall into the wrong hands and hurt anyone. But, it did.

## VI. Federal Claims and Causes of Action

**33.** Plaintiff hereby incorporates by reference and repeats all allegations contained in paragraphs 1-32 hereof.

**Detective Ralph D. Moore**

**34.** Detective Moore, acting under color of law as a police officer of the City of Harlingen Police Department, created the very danger that harmed your plaintiff, by allowing - and by continuing to allow - his son, Ernest Moore, access to the AR-15 assault rifle, when he knew his son was mentally unstable, knew his son was supposed to be on prescribed medication to stabilize himself, knew his son was upset over his

girlfriend, knew his son was a good shot, knew his son had that AR-15 assault rifle, and knew - before the Border Patrol Agents ever even arrived at the scene - that his son, Ernest Moore, that very day was already ". . . in some shit" or ". . . in some deep shit."

35. In conjunction therewith and otherwise, Detective Moore was guilty of the following and additional acts and omissions, all of which constituted an intentional, deliberate, or conscious indifference to the lives and safety of others; all of which were proximate and producing causes of the injuries to Ms. Carlson andall of which violated the constitutional rights of themselves and laws that were clearly established at the time:

(A) Detective Moore received, accepted, possessed, and kept that AR-15 assault rifle, without first qualifying in the proper use, safe storage, and a demonstrated proficient use of that AR-15 assault rifle.

(B) Detective Moore allowed his son, Ernest Moore, the killer, access to that AR-15 assault rifle.

(C) Detective Moore did not effectively deny his son access to that AR-15 assault rifle.

(D) Detective Moore did not store said weapon in the trunk of his assigned unit.

(E) Detective Moore, though a police officer, failed to timely warn his next door neighbor the Carlsons'- or to cause themto be warned-that his son, Ernest Moore, posed a serious and substantial risk to their lives and safety.

(F) Detective Moore failed to return said weapon to the City of Harlingen Police Department for safe keeping away from others at times when he was not storing it in his assigned unit.

**Defendant, Chief of Police Jim Scheopner**

36. Plaintiffs hereinto incorporate by reference and repeat all allegations contained in

paragraphs 1 through 35 hereof.

37.     In conjunction therewith and otherwise, Chief of Police Jim Scheopner was guilty of each of the additional and following acts and omissions, each and all of which constituted an intentional, a deliberate, or a conscious indifference to the lives and safety of persons; each and all of which proximately caused and resulted in the violations of constitutional and other rights of your plaintiff, Alice Carlson, to her life, liberty, and pursuit of happiness under the Constitution of the United States and to the violations of laws that were clearly established at the time by:

(A)     Issuing and authorizing and approving and ratifying the issuance of the AR-15 assault rifle to Detective Moore and by allowing him to keep it when he was not trained and qualified on the use of the weapon, who had not first demonstrated his proficiency with the weapon, who performed no duties for which the weapon was or would be appropriate, before the incident, and who was not trained in the safe storage of the weapon away from dangerous and other persons who might have access to the weapon before the incident.

(B)     Not enforcing the condition, representation or agreement that Detective Moore store the AR-15 assault rifle in the truck assigned to him, away from other persons.

(C)     Not adopting and not enforcing policies which required that every officer, including Detective Moore, first be trained in the proper use, proficiency, and storage of every weapon and first demonstrate his or her proficiency in every weapon before it was ever issued or turned over to the officer.

(D)     Not adopting and not enforcing a policy that no weapon be issued to or approved for use by an officer, unless the officer was assigned to a position for which the use of that weapon was appropriate.

(E)     Allowing Detective Moore to have and take possession of and keep the

AR-15 assault rifle that had been turned over to the City of Harlingen Police Department by a concerned citizen **for destruction** so that it could never fall into the wrong hands and hurt someone.

(F) Not disciplining Detective Moore for allowing his son, Ernest Moore, access to the AR-15 assault rifle, which Ernest Moore did use to kill and hurt others.

(G) Not first training and requiring Detective Moore to demonstrate his proficiency in the use and safe storage of the AR-15 before it was issued to Detective Moore.

**Defendant, City of Harlingen**

**38. Plaintiffs hereinto incorporate by reference and repeat all allegations contained in paragraphs 1 through 37 hereof.**

**39.** Before July 7, 1998, serious deficiencies in the operation of the City of Harlingen Police Department under Chief of Police Jim Sheopner were reported to, and came to the attention of, the City of Harlingen. The City of Harlingen further knew that Harlingen Chief of Police Jim Scheopner did not intend to - and before the incident did not - make any changes or efforts to materially improve the operation of the City of Harlingen Police Department. Before the incident, the City of Harlingen did not replace Jim Scheopner as Chief of Police with a competent and reliable Chief of Police.

**40.** In conjunction with all of the foregoing and otherwise and with an intentional, a

deliberate, or a conscious indifference to the lives and safety of citizens, including your plaintiff Alice Carlson, the City of Harlingen adopted or maintained, though its final policymakers, unconstitutional policies and customs, and failed to implement constitutional and proper policies and procedures, which proximately caused or resulted in the violation of the constitutional rights of Alice Carlson secured to her under the Constitution and laws of the United States of America and in injuries to your plaintiff, and in all resulting damages to her, by, among other things, the following additional things:

(A) Issuing, authorizing, approving, and ratifying the issuance of the AR-15 assault rifle to Detective Moore, who, before the issuance to him of weapon and who before the incident, was not trained on the use of the weapon, who had not demonstrated his proficiency on the weapon, who performed no duties for which the weapon would be or was appropriate, and who was not trained in the safe storage of the weapon away from dangerous persons who might have access to the weapon.

(B) Not enforcing the condition, representation or agreement regarding the storage by Detective Moore of that AR-15 assault rifle in the unit assigned Detective Moore and away from other persons before the incident.

(C) Not adopting and enforcing policies, before the incident, which required that every officer first be trained in the proper use and storage of every weapon and first demonstrate his proficiency in every weapon <u>before</u> it was issued to the officer, including Detective Moore.

(D) Not adopting and enforcing a policy before the incident that no weapon be issued to or approved for use by an officer, including Detective Moore, unless the officer, including Detective Moore, was then assigned to a position for which the use of that weapon was appropriate.

(E) Not disciplining an officer, including Detective Moore, who either violated the rights of another that are secured by the Constitution and laws of the United

States or of the State of Texas or who made or allowed an unsafe use of a weapon. or who allowed access to a weapon by someone other than the officer to whom it was issued and for whose sole possession and use it was approved.

(F) Allowing Jim Scheopner to serve as Chief of Police for the City of Harlingen, before the incident, but <u>after</u> his lack of competence and reliability to serve has come to the attention of the final policymakers having the power to remove him from the position <u>before</u> this incident.

(G) Not first training and requiring Detective Moore to demonstrate his proficiency in the proper use and safe storage of the AR-15 assault rifle before it was issued to Detective Moore.

(H) 41. The facts stated above through paragraphs 40 clearly constitute intentional, deliberate, or conscious indifference to well-known standards in the management of a municipal police department in the disposal of, training on, demonstrated proficiency in the use of, the handling of, and the safe storage of weapons.

(I) **VII. Pendant Claims Under Texas Law**

**Statement of Liability**

**42.** Plaintiff hereunto incorporate by reference and repeat the allegations of paragraphs 1 through 41of this Plaintiff's First Amended Complaint.

**43.** The City of Harlingen and Cameron County are liable to Plaintiffs under § 101.021 of The Texas Civil Practice and Remedies Code (The Texas Tort Claims Act) because of the negligent and other wrongful uses by Detective Moore, Chief of Police Jim Scheopner, and other personnel of the City of Harlingen of the AR-15 assault rifle as tangible personal property, which, singularly or in any combination with one another, proximately caused and resulted in injuries to, and in all resulting damages to Plaintiff, which acts and omissions included, among other things:

    A. Physically delivering the weapon to Detective Moore before the incident, rather than destroying it;

B. Physically delivering the weapon to Detective Moore when it was not then or before the incident appropriate to his duties;

C. Physically delivering the weapon to Detective Moore without first requiring him to be trained and to demonstrate his proficiency in its proper use and safe storage;

D. Physically storing the assault rifle in a gun case where it was accessible to someone other than Detective Moore, rather than in the patrol unit assigned to Detective Moore, where it would have been accessible only to Detective Moore;

E. Physically storing the assault rifle in an operable or serviceable condition, ready for use, while it was accessible to someone other than Detective Moore (including Ernest Moore), rather than first rendering it inoperable and unusable to anyone other than Detective Moore;

F. Detective Moore using a telephone at his residence before the incident for purposes other than to warn law enforcement officers enroute to the scene, or to cause the same to be done, of the serious and substantial risk posed by Ernest Moore to the lives and safety of law enforcement officers including, but not limited to, Agent Ricardo Guillermo Salinas.

G. The negligent implementation by Harlingen Chief of Police Jim Scheopner, Detective Moore and other personnel of the City of Harlingen of any policies that resulted in or contributed to or proximately caused injuries to, including, but not limited to, a policy of not implementing or enforcing policies, procedures, and regulations concerning the disposition, issuance and storing of weapons.

H. County personnel assisted in preventing egress to plaintiff.

**44.** The City of Harlingen is further liable to Plaintiffs because of the operable and usable condition of the weapon and the maintenance of the weapon in an operable and

usable condition before the incident that allowed its use by one to whom it was not assigned, Ernest Moore, to kill two Border Patrol Agents, including Ricardo Guillermo Salinas, on July 7, 1998.

**45.** Under the circumstances above described through paragraphs 44, Chief of Police Jim Schoepner was guilty of various acts and omissions of negligence that proximately caused and resulted in injuries to and the death of Ricardo Guillermo Salinas, when such acts and omissions were ones which <u>no</u> similarly-situated chief of police could reasonably have believed were proper, under the circumstances. These acts and omissions included, among others:

- A. Not ordering the destruction of the weapon <u>before</u> it was delivered to Detective Moore;

- B. Not ordering the destruction of the weapon <u>before</u> the incident;

- C. Allowing the weapon to be transferred or delivered or ratifying its transfer or delivery to Detective Moore;

- D. Not requiring Detective Moore to return the weapon to the City of Harlingen Police Department <u>before</u> the incident;

- E. Not adopting and not enforcing policies and procedures of the City of Harlingen Police Department concerning the destruction, issuance, possession, custody, training, demonstration of proficiency using, and safe storing of, away from persons other than the ones to whom they were assigned, that weapon <u>before</u> the incident.

- F. Not adopting and enforcing a policy before the incident that no weapon be issued to or approved for use by an officer, including Detective Moore, unless the officer, including Detective Moore, was then assigned to a position for which the use of that weapon was appropriate.

- G. Not requiring Detective Moore to be trained on the proper use and safe storage of, and to demonstrate his proficient use of AR-15 assault rifle at

        any time before the incident.

F.    Not resigning or removing himself as Chief of Police before the incident.

46.    In conjunction with all of the foregoing and otherwise, Detective Moore was guilty of each and all of the following additional acts and omissions of negligence that proximately caused injuries to and the death of Ricardo Guillermo Salinas and all resulting damages to her and to Plaintiffs:

A.    Not destroying the AR-15 assault weapon before the incident

B.    Taking possession of and keeping the AR-15 assault rifle before being trained on its proper and sage use and storage, before demonstrating a proficient use of that weapon.

C.    Not returning the AR-15 assault rifle to the Harlingen Police Department before the incident.

D.    Accepting and possessing the assault rifle at all;

E.    Failing to store the weapon in the trunk of his assigned unit away from access to it by others;

F.    Storing the weapon in a gun case at his home, where it was accessible to Ernest Moore;

G.    Storing the weapon in a gun case at his home, where Ernest Moore lived, in an operable and serviceable condition ready for use while it was accessible to and usable by Ernest Moore, who, in fact, accessed and used the weapon to kill two United States Border Patrol Agents including Ricardo Guillermo Salinas, and to shoot and kill another U.S. Border Patrol Agent;

H.    Failing to timely warn - and failing to cause anyone else to timely warn - law enforcement officers enroute to and at the scene of the incident of the serious and substantial risks to the lives and safety of law enforcement

officers posed by Ernest Moore on July 7, 1998, prior to the killings at the scene.

47. No municipality, chief of police, detective, or other similarly-situated law enforcement official or officer above mentioned could reasonably have believed that his conduct, on these various occasions and instances described above, was proper, under the circumstances.

## VIII. DAMAGES

48. As a proximate result of the incident, Cameron County is now jointly and severaaly liable along with the other defendant's for 2,000,000.00 Dolllars in damages. They are grossly negligent with the damages already attributed to the other defendants and are thus subject to exemplary damages.

## PRAYER

WHEREFORE, Plaintiff prays that this jury and Honorable Court enter judgment in favor of Plaintiff.

Respectfully submitted,

*Ronaldo S. Lozano*

Ronaldo S. Lozano
Fed. ID 14048
TBN: 12648010
360 E. Hwy. 77
San Benito, TX 78586
(956)399-9663
(956)399-8285
ATTORNEY-IN-CHARGE
PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing document was forwarded on July 7, 2000, to the following counsel of record and interested parties:

Mr. Tom Lockhart
Mr. Jim Denison
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
Attorneys for Defendant
CMRRR#          Z 438447821

Mr. Michael Greenberg
Mr. Richard Pena
LAW OFFICES OF RICHARD PENA, P.C.
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, Texas 7746-5747
Via Regular Mail

And by hand delivery to other plaintiffs counsel.

_____
Ronaldo S. Lozano

3163.P003