

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas ,
FILED

JUL 1 7 2000

Michael N. Milby
Clerk of Court

ALICE CARLSON     {

      {

V.       {

      {

CITY OF HARLINGEN, EL AL     {

CIVIL ACTION NO. B-00-071

**(ORAL HEARING IS REQUESTED)**

DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT UNDER FRCP 12(b)(4,5) and UNDER FRCP 12(b)(6)

TOM LOCKHART
Federal ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Federal ID No. 5950
Texas State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants,

CITY OF HARLINGEN and JIM SCHEOPNER

WALTER PASSMORE
Federal ID No. 2264
Texas State Bar No. 15560400
PASSMORE, WALKER & TWENHAFEL, LLP
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; Fax: 956/686-1276

Attorney for Defendant,
JIM SCHEOPNER, In His Individual Capacity

CHzPDF - www.faxlio.com

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.  Statement of Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . . . . .  1

II.  Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    A.  Service of Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    B.  Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.  Plaintiff Carlson Failed to Properly
    Serve Complaint on Government Entities . . . . . . . . . . . . . . . . . . . . . . .  5

V.  Amended Complaint Fails to State Claims Under 4th and 14th Amendments . .  6

    A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    B.  No Fourth Amendment Claim Absent
       A "Seizure" by Government Officers . . . . . . . . . . . . . . . . . . . . . .  7

    C.  Supreme Court and Fifth Circuit Have Not
       Extended Due Process to Require Defendants
       Prevent Harm By A Private Citizen . . . . . . . . . . . . . . . . . . . . . . .  9

    D.  Amended Complaint Fails to State Facts Showing Defendants
       Defendants Put Plaintiff Carlson In A Dangerous Environment
       and Stripped Him of the Ability to Defend Herself . . . . . . . . . . .  10

        1.  "State Created" Danger Exception Does Not Extend to
           Persons Who Were Not the Victims of the Crime and
           Suffer Only Emotional Distress . . . . . . . . . . . . . . . . . . . .  10

2.   Defendants Did Not Force Plaintiff in Harm's Way
     While Impairing Her Ability to Protect Himself . . . . . . . . . .  12

3.   Defendants Did Not Create A Risk Of
     Third Party Crime That Did Not Already Exist  . . . . . . . . . .  12

4.   Defendants Did Not Know Of Any
     Immediate Danger Facing A Known Victim  . . . . . . . . . . . .  14

VI.  State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

## INDEX OF AUTHORITIES

Cites:                                                                    Page

*Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3rd Cir. 1996) . . . . . . . . . . . . . . 5

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Brower v. Inyo*, 489 U.S. 593 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Callis v. Sellars*, 931 F.Supp. 504 (S.D.Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . 12

*Clifford v. Turk*, 2000 WL 249492, *4
    (D. Ore. Feb. 22, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*County of Sacramento v. Lewis*, 523 U.S. 833,
    118 S.Ct. 1708, 1716 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Daley v. Alia*, 105 F.RD. 87 (E.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*DeShaney v. Winnebago County Dept. of Soc. Serv.*,
    489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) . . . . . . . . . . . 2, 9, 10

*Doe v. Hillsboro ISD*, 113 F.3d 1412 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . 9, 10

*Estate of Brown v. Barian*, 43 F.Supp.2d 1008 (E.D.Wisc. 1999) . . . . . . . . . . . . 13

*Golden Spread Council, Inc. v. Akins*,
    926 S.W.2d 287 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Graham v. Connor*, 490 U.S. 396 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Greater Houston Transp. Co. v. Phillips*,
    801 S.W.2d 523 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CitePDF - www.texia.com

*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . 7

*Johnson v. Dallas ISD*, 38 F.3d 198
(5th Cir. 1994), *cert. denied*, 514 U.S. 1017 (1995) . . . . . . . . . . . 9, 10, 13

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1997) . . . . . . . . . . . . . . 10

*Kennedy v. Baird*, 682 S.W.2d 377
(Tex. App.- El Paso 1984, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Landol-Rivera v. Cruz*, 906 F.2d 791 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . 8

*Lefall v. Dallas ISD*, 28 F.3d 521 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 9, 13

*Losinski v. City of Trempealeau*,
946 F.2d 544 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mark v. Borough of Hatboro*, 51 F.3d 1137 (3rd Cir. 1995), *cert denied*,
516 U.S. 858 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521 (5th Cir. 1996) . . . . . . 6

*Medeiros v. O'Connell*, 150 F.3d 164 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . 8

*Osborne v. Brown*, 2000 WL 764928, *10
(E.D. Pa. June 13, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Randolph v. Cervantes*, 130 F.3d 727 (5th Cir. 1997)
*cert. denied* 525 U.S. 822 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 9-13

*Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389 (5th Cir. 1999) . . . . . . . . . . . . 11, 14

*Sanchez v. Figueroa*, 996 F.Supp. 143 (D.C.Puerto Rico 1998) . . . . . . . . . . . . . . 8

*Schaefer v. Goch*, 153 F.3d 793 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 8

*Standard Fruit & Veg. Co. v. Johnson*,
985 S.W.2d 62 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Statutes:

42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 7

Texas Civil Practices & Remedies Code:

Chap. 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Federal Rules of Civil Procedure:

Rule 4(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Rule 4(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Rule 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 5, 6
Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 6, 7

United States Constitution:

14th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 5, 7, 9
Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

Treatises:

Wright & Miller, *Fed. Prac. & Proc.*,
   § 1146, pp. 424-25 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ALICE CARLSON              {

                                   {       CIVIL ACTION NO. B-00-071

V.                           {

                                   {     **(ORAL HEARING IS REQUESTED)**

CITY OF HARLINGEN, ET AL    {

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER FRCP 12(b)(4,5) and UNDER FRCP 12(b)(6)

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants CITY OF HARLINGEN, TEXAS and JIM SCHEOPNER, and file this their **DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b) and UNDER FRCP 12(b)(6)** and would show the Court as follows:

### I.  Statement of Nature and Stage of the Proceedings

Plaintiff Carlson sues for emotional distress under the (1) Texas Tort Claims Act (Tex. Civ. Prac. & Rem. Code, Chap. 101) and (2) 42 USC § 1983.  Mrs. Carlson allegedly suffered fright when a private citizen, Ernest Moore, shot a Border Patrol agent. After Defendants Scheopner and Harlingen filed Motions to Dismiss, Carlson amended her Complaint; the Amended Complaint adds CAMERON COUNTY and R. D. MOORE as defendants.  Carlson has not served the new parties.

1

Defendants Harlingen and Scheopner again move to dismiss all claims under Fed.R.Civ.Pr. 12(b)(4,5). Subject to that motion they move to dismiss all claims under Fed.R.Civ.P. 12(b)(6).

## II. Statement of the Issues

1.     Whether the case should be dismissed for failure (1) to serve a summons with the Complaint and Amended Complaint as Fed.R.Civ.P. 4(c) requires; and (2) failure to serve Defendants Scheopner and City of Harlingen with the Amended Complaint.

2.     Whether the Complaint pleads any exception to the holding in *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that the 14th Amendment's Due Process Clause does not impose a duty on public officials to prevent a third party from injuring Plaintiff.

3.     Whether an exception exists to *DeShaney* for a risk of harm of criminal violence by a private citizen allegedly created by the Defendants Harlingen and Scheopner if (1) they did not force Carlson to encounter the danger, (2) they did not remove her ability to protect herself or escape the risk, (3) Carlson was not the victim of the third party's crime, (4) Carlson is not the victim of the crime, or (5) Carlson's injury is fright from a crime committed on another person.

4.     Whether Defendants had a duty under state law to safeguard City property in order to prevent a third party from taking it and negligently using it in a manner that causes emotional distress.

CMAPDF - www.fasios.com

5.     Whether Carlson has alleged facts showing the state tort of intentional infliction of emotional distress.

### III.  Background

#### A.     Service of Complaint

On May 19, 2000, Plaintiff's counsel personally delivered a copy of her Original Complaint to Defendant City of Harlingen's City Secretary, Ms. Sylvia Trevino.  See attached Exh. 1.[1]   Also on May 19, 2000, a copy of the Original Complaint was served on the wife of Defendant Scheopner.  See attached Exh. 2.  In both cases, there was no summons attached to or served with the Complaint.  Exhs. 1 & 2.

Defendants Harlingen and Scheopner moved to dismiss for failure to provide proper service.  Instead of serving them, Plaintiff filed an Amended Complaint, which she mailed to their counsel.  See attached Exh. 3.  The Amended Complaint did not come with a citation.

#### B.     Plaintiff's Allegations

Curiously, the Amended Complaint says even less about what happened to Mrs. Carlson and the nature of her injuries.  Virtually all of the new allegations complain only that Defendants' acts caused the death of Border Patrol Agent Ricardo Salinas; she only casually mentions that some how she was affected.

---

[1]   Exhs. 1, 2 and 3 are the Affidavits of Sylvia Trevino, Sue Schoepner, and Roger Hughes.  They are offered solely for the purposes of the Motion to Dismiss for improper service; they are not offered as part of the Motion to Dismiss for failure to state a claim.

3

Carlson alleges former police chief Scheopner approved the issuance of an AR-15 rifle to Harlingen Police Dept. Det. Moore. Amended Complaint, ¶ 14. She alleges Det. Moore was not proficient in the use and firing of the weapon and his duties did not require him to have such a rifle. Amended Complaint, ¶ 15. The Amended Complaint, ¶¶ 18, 34(A), alleges that Det. Moore promised to keep the weapon in his car trunk, and was not trained in the proper, safe storage of weapons.

The Amended Complaint, ¶¶ 19 and 21, allege Det. Moore, in fact, stored the rifle in a rifle safe in the bedroom of his son, Ernest Moore. Carlson alleges that Ernest Moore was unstable, taking anti-depressants, and a former cocaine user. Amended Complaint, ¶ 20. She alleges that, because the rifle safe was in Ernest's bedroom and he had a key to it, he had "access" to the rifle. Amended Complaint, ¶¶ 19, 21.

The Amended Complaint, ¶ 25, alleges that, on July 7, 1998, Ernest Moore was the suspect to a double homicide in Rio Hondo, Texas. As a result, the Sheriff's deputies began a manhunt for Ernest Moore at the Moores' residence. Amended Complaint, ¶¶ 25-26.

Carlson lived in a mobile home on the lot adjacent to the Moore property. Amended Complaint, ¶ 23. The Cameron County Sheriff's officers ordered her to stay on her property. Amended Complaint, ¶ 23.

Carlson alleges that Agent Ricardo Salinas was walking away from the house, when Ernest Moore stepped out of a nearby corn field and shot Agent Salinas. Amended Complaint, ¶¶ 28-30. Plaintiff does not allege how Ernest Moore's firing upon Agent

4

Salinas caused her injury or how she has any interest in the death of Agent Salinas. Although the Amended Complaint, ¶ 1, alleges that she was subjected to use of deadly force, there is no claim that Ernest Moore shot at her. In fact, she impleads that she was inside her house some distance away.

The Amended Complaint does not state how she was injured. The Original Complaint was quite clear that she suffered only emotional distress and resulting physical manifestations of emotional distress. Curiously, the Amended Complaint deletes any reference to or description of her injuries. However, her Response to Defendants' Motions to Dismiss, ¶ II, admits that her injuries were the ". . . infliction of emotional distress with physical manifestation."

The Amended Complaint claims that Defendants allegedly took liberty or property in violation of the Fourth Amendment made applicable through the U.S. Constitution, 14th Amend. Amended Complaint, ¶¶ 1, 39.

## IV. Plaintiff Carlson Failed to Properly Serve Complaint on Government Entities

Defendants Harlingen and Scheopner move to dismiss under Fed.R.Civ.P. 12(b)(4,5) due to improper service of the Original and First Amended Complaints. Fed.R.Civ.P. 4(c)(1) provides that a summons shall be served with the Complaint. Carlson did not serve a summons with the Original Complaint. Failure to serve a proper summons with the complaint requires dismissal. *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568-69 (3rd Cir. 1996).

Carlson did not serve the Amended Complaint on Defendants Harlingen or Scheopner. Rather, she mailed a copy of it to the Law Firm of Adams & Graham, L.L.P., by mail without any summons. Because neither Scheopner nor the City have made an appearance and are challenging prior service. Carlson could not obtain service on them by serving their counsel. *Daley v. Alia*, 105 F.RD. 87, 89 (E.D.N.Y. 1985); Wright & Miller, *Fed. Prac. & Proc.*, § 1146, pp. 424-25 (1987). In any case, the Amended Complaint came without a summons, and therefore was not proper service. *Ayers*, 99 F.3d at 568-69.

Plaintiff's Response, pp. 5-6, argue that she can still make service under Fed.R.Civ.P. 4(m) before August, 2000. While this may be the case, she has not done it yet and Defendants are entitled to dismiss her prior attempts.

V.  Amended Complaint Fails to State Claims Under 4th and 14th Amendments

A.  Standard of Review

If the Court denies dismissal under Rule 12(b)(4,5), Defendants seek dismissal of the Amended Complaint under Rule 12(b)(6).

Under Rule 12(b)(6), the court must accept the allegations as true and must view them in the light most favorable to plaintiffs, drawing all reasonable inferences in favor of the pleader. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal under Rule 12(b)(6) is correct when it appears that no relief can be granted under any set of facts that could be proven consistent with the allegations. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996). However, the Complaint must state facts, not

6

conclusions, to survive a Rule 12(b)(6) challenge.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

> B.    No Fourth Amendment Claim Absent
>       A "Seizure" by Government Officers

42 USC § 1983 is not itself a source of substantive rights.  *Graham v. Connor*, 490 U.S. 396, 393 (1989).  The first inquiry is to isolate the precise provision of the federal Constitution that is allegedly infringed.   *Graham*, 490 U.S. at 394.   The Fourth Amendment applies when the alleged use of excessive force arises from a search or seizure of the person.  *Graham*, 490 U.S. at 394; *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716 (1998).  A "seizure" occurs only when government agents deliberately cause the termination of an individual's freedom through means intentionally applied to that individual.  *Lewis, Id.* at 115; *Brower v. Inyo*, 489 U.S. 593, 596-597 (1989).  If the Complaint does not show a "seizure" under the Fourth Amendment, then an "excessive force" claim can be sustained only under a 14th Amendment "Substantive Due Process" analysis.  *Lewis*, 118 S.Ct. at 1715-1716; *Petta v. Rivera*, 143 F.3d 895, 910-911 (5th Cir. 1998).

In *Lewis*, the Supreme Court made it clear that a Fourth Amendment "seizure" occurred only when the government caused an intended termination of freedom of movement through means intentionally applied to that individual.  118 S.Ct. at 1715 (instigating chase of motorcycle on which plaintiff was a passenger was not a Fourth Amendment "seizure").  Consequently, unintended injuries to bystanders or hostages

CMPDF - www.faxisx.com

during an arrest are not a "seizure" under the Fourth Amendment. *Lewis*, 118 S.Ct. at 1715; *Landol-Rivera v. Cruz*, 906 F.2d 791, 795-96 (1st Cir. 1990) (police officer who inadvertently shot hostages while aiming to hit kidnapper did not "seize" hostage for Fourth Amendment purposes); *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998) (accidental shooting of wife held hostage by husband was not a "seizure" under Fourth Amendment, even though police officers had surrounded their house and instructed wife to "get down"). Likewise, there is no Fourth Amendment claim when the force is not directed deliberately at the plaintiff. *Petta*, 143 F.3d at 901; *Medeiros v. O'Connell*, 150 F.3d 164, 168 (2nd Cir. 1998); *Sanchez v. Figueroa*, 996 F.Supp. 143, 1476 (D.C.Puerto Rico 1998).

Here, Carlson has no Fourth Amendment claim against Harlingen and Scheopner, because the Amended Complaint does not allege they "seized" her. First, she affirmatively alleges it was the County's agents who told her to remain in her house. Second, unintended injuries to bystanders do not constitute a "seizure" under the Fourth Amendment. *Lewis*, 118 S.Ct. at 1715. There is no "seizure" when the defendant does not deliberately direct any force at the plaintiff. *Petta*, 143 F.3d at 901; *Medeiros*, 150 F.3d at 168.

8

C.    Supreme Court and Fifth Circuit Have Not
      Extended Due Process to Require Defendants
      Prevent Harm By A Private Citizen

Carlson's Response to Defendants' Motions to Dismiss makes it clear that she is

relying solely upon the "state created danger" exception. Neither the U.S. Supreme Court

nor the Fifth Circuit has recognized this as a valid exception to *DeShaney*; the Supreme

Court has strongly indicated it will not recognize the exception. Even if the exception

became law later, Carlson's claim does not fit within it.

In *DeShaney*, the Supreme Court plainly stated that the 14th Amendment's Due

Process Clause was triggered only by affirmative government action and put no duty on

government officials to act to prevent a third party from harming the claimant. 489 U.S.

at 196-197, 109 S.Ct. at 1004. The court neither approved nor disapproved of a rule

imposing liability if the State created the risk of harm to which it forced the claimant to

suffer, i.e., an exception for "stated-created" danger. *Id.*

Though often asked to do so, the Fifth Circuit has consistently declined to adopt

the "state-created danger" rule. *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir.

1997), *cert. denied*, 525 U.S. 822 (1998); *Doe v. Hillsboro ISD*, 113 F.3d 1412, 1415 (5th

Cir. 1997) (en banc); *Johnson v. Dallas ISD*, 38 F.3d 198, 201 (5th Cir. 1994), *cert.

denied*, 514 U.S. 1017 (1995). The Fifth Circuit has cast doubt on whether it is a viable

exception to *DeShaney*. *Lefall v. Dallas ISD*, 28 F.3d 521, 530 (5th Cir. 1994). The

Supreme Court stated that the rationale for any exception is that the state exercises its

authority to restrain the individual's liberty so as to render him unable to protect himself.

*DeShaney*, 489 U.S. at 200.  In *Johnson*, the Court questioned whether it could ever meet the "demanding standard for constitutional liability."  38 F.3d at 201.

      D.      Amended Complaint Fails to State Facts Showing Defendants Defendants Put Plaintiff Carlson In A Dangerous Environment and Stripped Him of the Ability to Defend Herself

Though the Fifth Circuit has declined to adopt the "state-created danger" rule, it has described its elements as:

1.      The government officials must create the dangerous situation;

2.      They must know the situation is dangerous;

3.      The danger must create an opportunity for a third party to commit a crime which would not otherwise exist; and

4.      They must affirmatively place the plaintiff in a position of danger in such a way as to strip the plaintiff of his ability for self defense.

*Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201.  The officials' actions must place the plaintiff at a specific risk, as opposed to a risk that affects only the public generally. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1997); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3rd Cir. 1995), *cert denied*, 516 U.S. 858 (1995).  The official must have actual knowledge that the risk of harm exists.  *Doe*, 113 F.3d at 1415.

      1.      "State Created" Danger Exception Does Not Extend to Persons Who Were Not the Victims of the Crime and Suffer Only Emotional Distress

Carlson does not allege that Ernest Moore shot her, shot at her, attempted to shoot her, or assaulted her in any way.  She does not allege facts indicating that she could be considered the victim of any crime he committed.  The only crime she describes is Ernest

10

Moore shooting the Border Patrol Agents. It appears that she is somehow 'piggy-backing' onto their deaths, i.e., that if she lived on the same country road where they were shot her emotional distress somehow resulted from the same force that killed them.

The gist of Carlson's claim is that, because someone else was shot, she suffered emotional distress. Virtually every case that has recognized or discussed the "state created" danger exception to *DeShaney* has applied it to *victim* of the third party's crime. The Fifth Circuit has said it can apply only when the harm is the creation of the chance for a private citizen to commit a crime. *Randolph*, 130 F.3d at 731. The officer must know that the victim is in immediate danger. *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999). None of these elements would mean anything if the state must protect not only the direct victims, but also those who might learn of the victim's injuries or happen to live in the area of the crime.

The "state created" danger exception claims involve substantial deprivations of liberty interests; it has not been found when the primary injury is emotional distress. *See, e.g., Osborne v. Brown*, 2000 WL 764928, *10 (E.D. Pa. June 13, 2000)(no deprivation of 'liberty' to support "state created" danger claim that police failed to protect plaintiff from verbal harassment of demonstrators); *Clifford v. Turk*, 2000 WL 249492, *4 (D. Ore. Feb. 22, 2000)(no "state created" danger liability for officer that spread rumor that decedent had turned in his friends in to the police, even though resulting ridicule and harassment from schoolmates drove him to suicide).

11

Therefore, the "state created" danger exception does not extend beyond persons who are the victim of the third-party's criminal acts and suffer only emotional distress.

    2.    Defendants Did Not Force Plaintiff in Harm's Way
           While Impairing Her Ability to Protect Himself

Here, the allegations conclusively acknowledge that neither Harlingen nor Scheopner put Mrs. Carlson into a dangerous situation nor did they strip her of her ability of self defense. The Amended Complaint, ¶ 23, alleges the Sheriff's deputies "ordered" her to remain in her house. This conclusively negates any claim these Defendants put her in harm's way. *See, for example, Randolph*, 130 F.3d at 731; *Callis v. Sellars*, 931 F.Supp. 504, 513, 520 (S.D.Tex. 1996).

Carlson's Response, p. 5, argues that the failure to advise her of danger "stripped" her of self-defense because she cold not leave. However, she alleges she stayed at the request of the Sheriff. Simply because Carlson lived near the Moore residence did not make her more vulnerable. *See, for example, Randolph*, 130 F.3d at 731 (social worker's encouragement of plaintiff to live at halfway house did not create opportunity that would not otherwise have existed for crime to occur). The Complaint fails to show that the *Defendants* stripped her of means to defend herself and cut off from all sources of aid.

    3.    Defendants Did Not Create A Risk Of
           Third Party Crime That Did Not Already Exist

Here, the alleged risk of harm was Carlson would suffer emotional distress after Ernest Moore seized the HPD rifle and shot a Border Patrol Agent trying to capture him. The pleadings must show Defendants had created the opportunity for a third party's crime

that otherwise would not have existed. *Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201. Therefore, Carlson must plead facts showing that Harlingen and Scheopner were actually aware they had created an extreme risk that a private citizen would use the rifle to shoot someone so as to frighten Carlson which risk did not otherwise exist. *Johnson*, 38 F.3d at 201-2; *Lefall*, 28 F.3d at 531.

The Complaint alleges nothing to show that Defendants incited Moore to take Det. Moore's rifle or fire on the sheriff's deputies. The pleading states no facts showing that, unless Ernest Moore seized an HPD rifle, no gunfire would have erupted. Not issuing the rifle to Det. Moore would have prevented Ernest from having it. However, this is not the same thing as creating an opportunity to commit those crimes which Ernest would not have had otherwise. Failing to prevent a crime is not the same thing as causing it. *Estate of Brown v. Barian*, 43 F.Supp.2d 1008, 1019 (E.D.Wisc. 1999).

Any alleged knowledge that Ernest Moore might be dangerous or likely to harm people does not create the risk of harm. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 700 (9th Cir. 1990); *Losinski v. City of Trempealeau*, 946 F.2d 544, 551 (7th Cir. 1991). Plaintiff must state facts showing Defendants' storage practices created the opportunity for Ernest Moore to cause Carlson to suffer emotional distress, which chance he would not have had without the HPD rifle.

13

4.   Defendants Did Not Know Of Any
     Immediate Danger Facing A Known Victim

The "state created danger" doctrine will not apply where the government actor is not aware of any immediate danger facing a known victim. *Saenz*, 183 F.3d at 392. There, the Fifth Circuit clearly stated that the "state created danger" theory is inapposite without a known victim.  *Id.* at 392.

In *Saenz*, the Fifth Circuit upheld summary judgment in favor of two sheriff's deputies who declined to arrest an obviously drunk driver.  183 F.3d at 390.  About 15 minutes after the deputies declined to arrest him, the drunk driver had an accident causing two fatalities. *Id*.  The Fifth Circuit affirmed, holding there was no Due Process violation for increasing the risk of harm to unidentifiable members of the public.  *Id*. at 391.

Here, there is no allegation Defendants Harlingen and Scheopner even knew Carlson existed, much less knew she was at home and in any danger.  Plaintiff claims that she stayed in her house only because the Sheriff's deputies asked her to do so.  She alleges no facts showing the Defendants knew or were virtually certain that the Sheriff would direct her to take this action.

## VI.  State Law Claims

Plaintiff alleges only a negligence claim against Defendants.  She does not allege that Defendants entrusted the rifle to Ernest Moore.  Rather, she relies on a theory that he took it without Det. Moore's knowledge or consent.  The alleged negligence focused solely on the inadequate security for the rifle, not negligent entrustment to Ernest Moore.

Finally, the sole event is that shooting the Border Patrol agents caused emotional distress to Plaintiff Carlson.

First, the only resulting injury was emotional distress. There is no general duty in Texas not to negligently inflict emotional distress. *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993). A claim of intentional infliction can lie only if defendant intended that plaintiff suffered emotional distress. *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 66-67 (Tex. 1998). "We hold that intentional infliction of emotional distress is not available as an independent cause of action unless the actor intends to cause severe emotional distress or severe emotional distress is the primary risk created by the actor's reckless conduct," 985 S.W.2d at 63. Carlson does not allege Harlingen or Scheopner intended any action caused her emotional distress.

Second, Texas cases have held that negligent entrustment of a firearm to an incompetent user may actionable. *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex. App.-El Paso 1984, no writ). However, *Kennedy* does not state that there can be liability for failing to prevent the weapon from being taken without permission.

To the extent that the complaint alleges Defendants negligently failed to destroy the rifle, it fails to state facts raising state law tort duty. Whether the facts arise to a legal duty to exercise ordinary care is a law question for the court. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The court weighs the nature of the risk, the foreseeability of the risk of harm, and the probability of injury against the utility of the defendant's conduct, imposing a burden on the defendant to guard against that

injury, and the magnitude of that burden. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289-90 (Tex. 1996). The foreseeability of harm is not alone sufficient to create a duty to exercise care. *Golden Spread Counsel*, 926 S.W.2d at 290-291. Generally, a person has no duty to protect another from the criminal acts of the third party or otherwise control the third party to prevent harm. *Walker v. Harris*, 924 S.W.2d 375, 377 (1986).

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants CITY OF HARLINGEN, TEXAS and JIM SCHEOPNER pray the above and foregoing be taken under submission and upon hearing same, the Court grant the relief requested, dismiss the Complaint and Amended Complaint, dismiss all or part of the claims alleged, or grant any other such further relief to which they may show themselves entitled.

Respectfully submitted,

By: _____
TOM LOCKHART
Federal ID No. 2257
State Bar No. 12473500
ROGER W. HUGHES
Federal ID No. 5950
State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants,

CITY OF HARLINGEN and JIM SCHEOPNER

WALTER PASSMORE
Federal ID No. 2264
Texas State Bar No. 15560400
PASSMORE, WALKER & TWENHAFEL, LLP
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; Fax: 956/686-1276

Attorney for Defendant,
JIM SCHEOPNER, In His Individual Capacity

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this __17th__ day of July, 2000, to the following counsel of record and interested parties:

Attorney of record for Plaintiff, ALICE CARLSON:

    Mr. Ronaldo S. Lozano             **Via CMRRR No. 7099 3220 0001 0358 0504**
    Attorney at Law
    360 East Hwy. 77, Suite 1
    San Benito, TX 78586-5214

    Mr. Walter Passmore                   **Via Regular Mail**
    PASSMORE, WALKER & TWENHAFEL, LLP
    P. O. Drawer 3766
    McAllen, TX 78502-3766

ROGER W. HUGHES

18

# AFFIDAVIT

STATE OF TEXAS                    §
                                  §
COUNTY OF CAMERON                 §

BEFORE ME, the undersigned Notary Public in and for the State of Texas, on this

day personally appeared SYLVIA TREVINO, known to me to be the person whose name

is subscribed hereto, who being first duly sworn in the manner provided by law, on oath

stated as follows:

1.      My name is SYLVIA TREVINO.  I am over the age of 18 years and
        am competent to make this affidavit.   I am currently the City
        Secretary for the City of Harlingen.

2.      On May 19, 2000, Mr. Ron Lozano came to City Hall in Harlingen
        and served on me Plaintiff's Complaint in "Carlson v. City of
        Harlingen, et al.", Civil Action No. B-00-071.  He did not give me
        a summons in that case nor was a summons attached to the
        Complaint.  He served on me only the Complaint.

The above and foregoing is true to my personal knowledge.

                                        SYLVIA TREVINO

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the

said Affiant, on the ___8th___ day of June, 2000, to certify which witness my hand and

seal of office.

DORIS P. LOUX
Notary Public
STATE OF TEXAS
My Comm. Exp. Aug. 31, 2000

Notary Public, State of Texas
Printed Name: Doris P. Loux
My Commission Expires: 8-31-2000

_Motion to Dismiss, Exh. 1

# AFFIDAVIT

STATE OF TEXAS         §
                               §

COUNTY OF CAMERON     §

BEFORE ME, the undersigned Notary Public in and for the State of Texas, on this day personally appeared SUE SCHEOPNER, known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath stated as follows:

1.     My name is SUE SCHEOPNER. I am over the age of 18 years and am competent to make this affidavit.

2.     I am the wife of the former Harlingen City Chief of Police, Jim Scheopner. On May 19, 2000, Mr. Sam Lozano came by our house to serve papers on my husband, Jim Scheopner. At that time, Jim Scheopner was in the shower and not available to come to the door. Mr. Lozano then served on me the Complaint in "Carlson v. City of Harlingen, et al.", Civil Action No. B-00-071.

3.     Mr. Lozano gave me only a copy of the Complaint. He did not give me any summons or any document marked or titled "Summons." The only document he left at our house was a copy of the Complaint in Civil Action No. B-00-071.

The above and foregoing is true to my personal knowledge.

_____
SUE SCHEOPNER

Motion to dismiss, Exh. 2

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the said Affiant, on the _8ᵗʰ_ day of June, 2000, to certify which witness my hand and seal of office.

RITA BALLI
MY COMMISSION EXPIRES
February 11, 2001

Notary Public, State of Texas
Printed Name: _Rita Balli_
My Commission Expires: _02-11-01_

# AFFIDAVIT OF ROGER W. HUGHES

STATE OF TEXAS          §
                                    §

COUNTY OF CAMERON     §

BEFORE ME, the undersigned Notary Public in and for the State of Texas, on this

day personally appeared ROGER W. HUGHES, known to me to be the person whose

name is subscribed hereto, who being first duly sworn in the manner provided by law, on

oath stated as follows:

1.      My name is ROGER W. HUGHES. I am over the age of 18 years and am competent to make this affidavit. I am an attorney with the law firm of Adams & Graham, L.L.P., in Harlingen, Texas. I am one of the counsel representing the City of Harlingen and Defendant Scheopner in the above-styled and referenced case.

2.      On July 10, 2000, I received in the mail a copy of Plaintiff's First Amended Complaint in the above-referenced case. There was no summons attached to it.

The above and foregoing is true to my personal knowledge.

_____
ROGER W. HUGHES

SWORN TO AND SUBSCRIBED before me, the undersigned authority, by the

said Affiant, on the _17th_ day of July, 2000, to certify which witness my hand and seal

of office.

> RITA BALLI
> MY COMMISSION EXPIRES
> February 11, 2001

_____
Notary Public, State of Texas
Printed Name: _Rita Balli_
My Commission Expires: _02-11-01_

**MOTION TO DISMISS, EXH. 3**