16

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 21 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ALICE CARLSON | § | |
| | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-00-071 |
| | § | |
| | § | JURY DEMANDED |
| CITY OF HARLINGEN, TEXAS, | § | |
| CAMERON COUNTY, TEXAS, | § | |
| R.D. MOORE | § | ORAL ARGUMENT REQUESTED |
| AND | § | |
| JIM SCHOEPNER | § | |

**PLAINTIFF'S RESPONSE TO INDIVIDUAL
DEFENDANT MOORE'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT UNDER 12(b)(6) BASED ON QUALIFIED IMMUNITY**

Qualified immunity is a good-faith defense necessary to ensure that "public officials are able to act forcefully and decisively in their jobs" and that "talented candidates [are] not deterred by the threat of damage suits from entering public service." *Harlow v. Fitxgerald*, 457 U.S. 800, 818 (1982). The origins of qualified immunity are two-fold:

1. to assume good-faith reliance on the part of defendants acting on behalf of the state pursuant to law which they assume is valid—thereby exposing defendants to only objective inquiries, and

2. to address public policy concerns underlying suits against government officials. Qualified immunity does not shield state officials from pervasive or unreasonable risks that they pose to citizens, or to egregious dangers that results from their actions. Qualified immunity does not allow state officials to create their own policy, use that policy to violate

1

the constitutional rights of others, and then stand behind it as immunity from suit. "Qualified immunity is available only to officials sued in their personal capacities, not in their official capacities." *Reyna v. City of Weslaco*, 944 S.W.2d 657, 661 (Tex.App. 1991), citing *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985).

Defendants appear to be arguing that because a bright line has not been drawn from the case law, there is no need to distinguish between what is a state-created danger and what is not. That proposition is wrong. Where a §1983 claim centers on procedures prescribed in the state statute, "it plainly implicates state and its authority in deprivation of constitutional rights, such that there was state action for purposes of §1983 action." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

The two are not exclusive. Section 211.104 : Texas Commission on Law Enforcement Officer Standards and Education sets the minimum standards for annual firearms proficiency. Section 211.104 is the law of the State of Texas <u>and</u> the City of Harlingen. It directly affects law enforcement and ensures public safety and protection to life, liberty, and property as guaranteed by the Constitution. Attempting to separate relevant questions of federal law from state law in a case that deeply meshes the constitutional rights protected by both is an error. No creative analogy is required to perceive the shocking consequences of recklessly allowing a deadly assault weapon to be readily accessible to the hands of a third party.

### A. DEFENDANTS' CUSTOM OR POLICY WAS THE PROXIMATE AND PRODUCING CAUSE OF THE INJURY TO PLAINTIFFS

The question is whether the governmental official is the final policymaking authority for the government. Justice Tom Reavley observed in the *Grandstaff* case that,

"A city may violate a person's civil rights through a formally declared policy, i.e., by direct orders or promulgations, or through an informal acceptance of a course of action by its employees, i.e., custom or usage..." *Grandstaff v. City of Borger, Tex.*, 779 F.2d 1129 (5th Cir. 1986).

In this case, Defendant Schoepner, as Chief of Police, possessed the authority to hire, supervise, and train personnel, and to make other decisions relevant to the protections upon which the public relies. By making the types of decisions that were not reviewable by a higher authority, Defendant Schoepner himself created the very decisions that became customary usage and police department policy. It was Defendants' duty to adequately train and supervise members of the police force in the storage and use of dangerous weapons such as the AR-15, and to implement procedures fit to the needs of the police department. When the City of Harlingen and Defendant Schoepner assigned a highly dangerous assault weapon to Defendant Moore without adequate training, allowing Moore to take the weapon home to keep it at his home, Defendants created the very policy that enabled this disaster to occur. Defendant Schoepner was acting in his role as Chief of Police for the City of Harlingen when he adopted such an unconstitutional policy.

The Supreme Court has said that in proving inadequate training, plaintiff must show reckless disregard or deliberate indifference in the training in order to establish the requisite "causal connection between omissions in a police training program and affirmative misconduct by individual officers in a particular instance." *Canton*, 489 U.S. at 378. The 'deliberate indifference' standard has to do with what is required to establish the municipal policy as the "moving force" behind the constitutional violation. *Canton*, 489 U.S. at 388 n.8. The Supreme

Court has also recognized municipal liability where an act or decision of a policymaker directly effected a constitutional deprivation. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). In such cases where the final policymaker caused a constitutional deprivation, the Fifth Circuit has held that there are no real problems with respect to issues of fault or causation. *Bennett v. Pippin*, 74 F.3d 578, 586 & n.5 (5th Cir. 1996).

While Police Chief, Schoepner went out to the site of this occurrence prior to the start of the carnage, he had communicative abilities and knowledge of the propensity of danger involved through R. D. Moore, yet he chose to ignore Ms. Carlson and left her in harm's way. Officer Moore who resided in the next residence to Ms. Carlson, and knew his son would place persons in danger went out in the neighborhood to search for him, but neglected to alert her of severe imminent danger. It is these facts which cause a special relationship between himself and Plaintiff.

In this case, Defendants were the moving force that caused Plaintiff's constitutional deprivation and produced her injury. By creating and utilizing their procedure in order to possess the weapon, Defendants essentially adopted and gave credence to such as official policy. The AR-15 was a anti-personnel military-type assault weapon that Defendants knew was capable of causing immense injury. Defendants knowingly created the zone of danger that surrounded the AR-15 and are liable for the constitutional injury to Plaintiff that resulted. Defendants themselves acknowledge that the shots fired at a home they knew to be occupied could have been theirs. This excessive force is violative of the Fourth Amendment. Defendants label this an 'isolated error'. Unfortunately, isolated errors often cause isolated deaths. Regardless, it is no less excusable. Defendant's adopted policy was the producing cause of Plaintiff's injury.

## B. Request for Limited Discovery

In case this Court finds that the facts alleged in this reply are insufficient to refute

Defendants' Motion to Dismiss on grounds of qualified immunity, Plaintiff hereby respectfully requests that the Court allow for limited discovery in this case. The facts upon which Defendants rely are genuine issues of fact that are disputed in this case. Plaintiff is at a distinct disadvantage to determine the sufficiency of facts or bring proper clarification to their validity ( though she has strove ), since Defendants are in control of the facts that surround the tragedy in question.

## CONCLUSION

Plaintiff asserts her Due Process claim based on the affirmative duty owed to her by Defendants given the state-created danger that caused the violation of her Fourteenth Amendment rights. Qualified immunity is not proper where the egregious acts of state officials strips citizens of the protections afforded by the Constitution, and the public welfare should not be subject to the unreasonable risks and offensive practices of a few, like Lt. Schoepner.

Although, the Fifth Circuit has yet to apply the state-created danger doctrine to any case that has come before it, the particular facts of this case indicate that this is the time for such application particularly since a special relationship exists, caused by law enforcement agencies preventing her egress from the " war zone ".

## PRAYER

**WHEREFORE**, Plaintiff respectfully requests this Court to deny Defendants Motions to Dismiss and allow Plaintiff to proceed immediately with preparation for a speedy trial of this case and consolidate with case B-98-162 for pre-trial matters.

Respectfully,

*/s/ Ronaldo S. Lozano*
Ronaldo S. Lozano

Fed. ID 14048
TBN: 12648010
360 E. Hwy. 77, Suite 1
San Benito, TX 78586-5214
(956)399-9663
FAX (956)399-8285
ATTORNEY-IN-CHARGE
PLAINTIFF

ClibPDF - www.fastio.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing document was forwarded on August 21, 2000, to the following counsel of record and interested parties:

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St, Suite 201
McAllen, Texas 78501
Attorneys for Defendant Schoepner & Moore
CMRRR# Z 382 601 658

Ronaldo S. Lozano