18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 1 2000

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ALICE CARLSON § | |
| § | |
| § | |
| V. § | CIVIL ACTION NO. B-00-071 |
| § | |
| § | JURY DEMANDED |
| CITY OF HARLINGEN, TEXAS, § | |
| CAMERON COUNTY, TEXAS, § | |
| R.D. MOORE, § | |
| AND § | |
| JIM SCHEOPNER § | |

## PLAINTIFF'S RESPONSE
## TO DEFENDANTS' MOTIONS TO DISMISS
## FIRST AMENDED COMPLAINT UNDER
## FRCP 12(b)(5) and UNDER FRCP 12(b)(6)

TO THE HONORABLE JUDGE OF THIS COURT:

### I.

### STANDARD OF REVIEW

The standard of review for a motion to dismiss is stated in Page 6 of their Motion to Dismiss under FRCP 12(b)(6) as following:

> Under Rule 12(b)(6), the court must accept the allegations as true and must view them in the light most favorable to plaintiffs, drawing all reasonable inference in favor of the pleader. *Baker v. Putnql*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal under Rule 12(b)(6) is correct when it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Meadowbriar*

*Home For Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996).

A court may not grant a motion to dismiss "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). In other words, even if the complaint fails to state a claim, a court ordinarily should not dismiss the complaint except after affording every opportunity to plaintiff to state a claim. *Blair v. National Construction Company of the South, Inc.*, 611 F.2d 80, 82 (5th Cir. 1980); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977); *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955).

In case this Court finds that the facts alleged in this reply are insufficient to refute Defendants' Motion to Dismiss on grounds other than qualified immunity, Plaintiff hereby respectfully requests that the Court allow for limited discovery in this case. The facts upon which Defendants rely are genuine issues of fact that are disputed in this case. Plaintiff is at a distinct disadvantage to determine the sufficiency of facts or bring proper clarification to their validity ( though she has strove ), since Defendants are in control of the facts that surround the tragedy in question.

## II.

## THE FACTS ALLEGED IN FIRST AMENDMENT COMPLAINT ARE SUFFICIENT TO SUPPORT PLAINTIFFS' § 1983 CAUSE OF ACTION

Conduct of a state official, more culpable than negligence, may constitute denial of due process sufficient to support an action under 42 U.S.C. § 1983. *Salas v. Carpenter*, 980 F.2d 299, 307 (5th Cir. 1992). The conduct of the individual Defendants, Detective

R.D. Moore and Police Chief Jim Scheopner, alleged in the amendment, is more culpable than negligence.

In the present case, the AR-15 semi-automatic assault rifle used by Ernest Moore, son of Detective Moore, to kill Ricardo Guillermo Salinas and Susan Lynn Rodriguez, and injure Plaintiff Carlson in the ensuing "war zone" through infliction of emotional distress with physical manifestation, was owned by a Harlingen citizen, Sylvia Pirtle, a physician's wife. In 1996, she delivered possession and ownership of this assault rifle to the Harlingen Police Department, for one – and only one – purpose: to destroy it because she was afraid of burglary and that the assault rifle could fall into the dangerous hands of criminals. Instead of destroying it, Chief Scheopner illegally took possession of the rifle for the Harlingen Police Department and assigned it to Detective Moore. The rifle should not have been assigned to Detective Moore because he does not meet the existing minimum statewide proficiency standards for that type of weapon.

After the tragic event in question, Chief Scheopner made the purposely misleading statement to the media, which is set forth in the Harlingen Police Association's letter of October 14, 1998 requesting the Civil Service Commission to investigate the ruinous event in question.

Based on the matters discussed in the letter mentioned above, it is clear that the possession of the rifle by Detective Moore is an abuse of power under color of law by Chief Scheopner and Detective Moore. If they were not law enforcement officers, the rifle would not have ended up in Detective Moore's hands. Had they followed the law, the rifle would not have ended up in Detective Moore's hands. The abuse of power under color of law, that includes the Cameron County Sheriff's Department actions,

proximately caused the tragic sequence of events, in that, but for the reckless disregard of the law by the Sheriff's department, Chief Scheopner and Detective Moore, the sad event in question would never have taken place.

Furthermore, as the facts set forth in the First Amended Complaint, this case does meet the four-prong "state-created danger" test under *Randolph v. Cervantes*, 130F.3d 727, 730 (5th Cir. 1997) described as following:

1. The government officials must create the dangerous situation;

2. They must know the situation is dangerous;

3. The danger must create an opportunity for a third party to commit a crime which would not otherwise exist; and

4. They must affirmatively place the plaintiff in a position of danger in such a way as to strip the plaintiff of her ability for self defense.

First, Detective Moore, as a police officer, created the dangerous situation by allowing - or continuing to allow - his son access to the AR-15 by having the *only* other key to the gun cabinet where it was stored, when he knew his son was mentally unstable, knew his son was upset over his girlfriend, knew his son was a good shooter, and knew that his son that day was already "in some shit" or "in some deep shit", and by not warning next door neighbors – or having <u>another</u> officer do so – that his son had taken the AR-15 from the gun case that day, which was a conscious indifference to their safety. This led to the violation of Ms. Carlson's Constitutional rights.

Defendant's at the onset of proceeding's stated that " R. D. Moore had both keys to the gun vault ", however, even after widespread dissemination of Ernest Moore having his own key, they eschew ' access ' as meritless. Yet, this was easy access, because from the start both of the Moore's had a key. Further, since the gun safe was in

-4-

his room and he used the rifle to practice with, Ernest was able to fulfill his Dad's prediction that he was a " damn good shot "! This was a storage practice with not mere 'access', but fruitful easy access to a vault filled with hateful Nazi regalia and a frightful automatic weapon.

  Second, those same facts show that Detective Moore knew the situation was dangerous. Further and in fact, he told another officer – before the shots – that his son was probably off in the brush (Detective Moore knew his son was in the vicinity, because his truck was there), the AR-15 was missing from the gun cabinet in the house, his son was upset and mentally unstable, his son was a good shooter with the AR-15, and he might be suicidal. R. D. Moore at 6:00 a. m. on July 7, 1998, knew that his son was in " deep shit ", the truck he'd driven home in had sustained damage, the truck contained a sizable quantity of ammunition, and of course that the rifle was missing from the safe. He *and* his wife thereupon went into the community looking for their son. Though, Ms. Carlson lived adjacent to the Moore's, it did not occur to them that at dawn, a homemaker, would be at home. There was no warning given to her. Officer Moore had the experience to recognize imminent danger, yet without even inquring if Ernest had gone to the nearest neighbor, still left Ms. Carlson in harm's way.

  Third, by not informing – or having another officer inform Plaintiff – of these clear and present dangers, Detective Moore stripped Alice Carlson from defending herself simply by staying away, which was a conscious indifference to safety on the part of Detective Moore. Further, Cameron County Sheriff Deputies or other law enforcement agencies prevented Ms. Carlson egress from a dangerous context thus causing her liberty interests to be placed under their [defendants] collective directive and

control. The Fourth Amend. to the U.S. Constitution guards against seizure. And her ability to acquire private aid was compounded by law enforcement cutting off her telephone line(s). <u>DeShaney v. Winnebago County Dept. of Soc. Serv.</u>, 489 U.S. 189, ( 1989 ).

Focus of the issue is not whether someone else was shot, but the extreme probability that she would be shot premised on restraint of her liberty causing a ' special relationship ', <u>Randolph v. Cervantes</u>, 130 F.3d 727 (1997), based on a state created danger theory, <u>Saenz v. Heldenfels Bros., Inc.</u>, 183 F.3d 389 (1999).

### III.

### CITY OF HARLINGEN'S LIABILITY IN 1983 ACTION IS PREDICATED UPON THE CONDUCT OF CHIEF SCHEOPNER & OFFICER R.D. MOORE

Chief Scheopner had final authority to make and establish policy governing the operation of the City of Harlingen Police Department ( Trial testimony of No. 97-12-7629-D, a sexual harassment case ), and the conduct of its officers and personnel. In all things, Chief Schoepner at all times acted in bona fide pursuance of general authority to act for the City of Harlingen on the subjects and matters to which their acts relate, which acts were and are imputed to the City of Harlingen. *Pembaur v. City of Cincinatti*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298 (1986); *Thomas v. Sams*, 734 F.2d 185, 192, (5th Cir. 1984), cert. denied, 472 U.S. 893, 105 S.Ct. 3476(1985).

### V.

### SERVICE OF PROCESS

FRCP 4(m) states " If service...is not made upon defendant within120 days **after** the filing of the complaint, ... ". Since, 120 days must elapse before a violation of service of process occurs Plaintiff is still within her legal rights to pursue discovery in this case.

Respectfully submitted,

*Ronaldo S. Lozano*

RONALDO S. LOZANO
FED ID 14048
TBN: 12648010
360 E. Hwy. 77, Suite 1
San Benito, TX 78586-5214
(956)399-9663
FAX (956)399-8285
ATTORNEY-IN-CHARGE

PLAINTIFF

# CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing document was forwarded on August 21, 2000, to the following counsel of record and interested parties:

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St, Suite 201
McAllen, Texas 78501
Attorneys for Defendant Schoepner & Moore
CMRRR# Z 382 601 658


Mr. Tom Lockhart
Mr. Jim Denison
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
Attorneys for Defendant City of Harlingen
By hand delivery


_Ronaldo S. Lozano_
Ronaldo S. Lozano